IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> (1) ASHLEY DELAY, <br> (2) DEREK WOOD, <br> (3) SHELLEY FREDERICO, and <br> (4) J. DAVID BEMO, JR., <br><br> Defendants. | Case No. 12-CV-0194-JHP |

## OPINION AND ORDER

Before the Court are Plaintiff State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment [Doc. No. 23]; Defendant J. David Bemo, Jr's ("Bemo") Response in Opposition [Doc. No. 24]; and State Farm's Reply to Bemo's Response [Doc. No. 25]. After consideration of the briefs, and for the reasons stated below, State Farm's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

**A. Procedural History**

On August 25, 2011, Bemo filed a Petition in the District Court of Muskogee County, Oklahoma, Case No. CJ-2011-413 ("underlying lawsuit"), asserting a negligence claim against Ashley Delay ("Delay") and Delay's boyfriend, Derek Wood ("Wood"). On April 30, 2012, State Farm Fire and Casualty Company ("State Farm") brought the instant action seeking a declaratory judgment of non-coverage under a homeowners policy issued to Shelley Federico ("Federico") for claims made against Delay and Wood.

1

**B.  Factual Background**

On August 27, 2009, Bemo was attacked and injured by a dog owned by Delay and Wood. In the underlying lawsuit, Bemo alleged that the attack and his injuries were due to the negligence of Delay and Wood.  The property where the dog attack occurred is located at 316 North Camden Place in Muskogee, Oklahoma ("Muskogee Residence").  The Muskogee Residence is owned by Federico, who lived there until 2008, when she moved to Grove, Oklahoma.  At the time the incident occurred, Federico was leasing the Muskogee Residence to Delay and Wood.  Further, at the time of the incident, there was in force a homeowners insurance policy (the "Policy") issued to Federico by State Farm.  Delay and Wood are not named insureds on the Policy.

The policy provides in relevant part as follows:

> SECTION II - LIABILITY COVERAGES
>
> COVERAGE L - PERSONAL LIABILITY
>
> If a claim is made or suit is brought against an *insured* for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1.  pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.  provide a defense at our expense by counsel of our choice...

[Doc. No. 23, Ex. 6] (emphasis added). The policy defines an "insured" as:

> a.   you and your relatives *who primarily reside in your household*; and,
>
> b.   any other person under the age of 21 *who primarily resides in your household* and is in the care of a person described above.

[*Id.*]   The policy provides that "You" and "your" mean the "named insured" shown in the Declarations and the named insured's spouse if a resident of the named insured's household. [*Id.*]

2

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

### B. Insurance Coverage Under the Policy

The dispositive issue in this case is whether Delay and Wood are insureds under the Policy and are, therefore, entitled to defense and indemnification for claims brought against them by Bemo in the underlying lawsuit. The Policy sets out two relevant definitions of the term *insured*: (1) the named insured; and (2) a relative of the named insured who primarily resides in the named insured's household.

As to the first definition of insured, it is undisputed that Delay and Wood are not named insureds on the Policy; therefore, to be considered insureds by definition under the policy, Delay

and Wood must be "relatives who primarily reside" in Federico's household. [Doc. No. 23, Ex. 6]. The word "household" is not defined by the policy. It is therefore necessary to determine the plain and ordinary meaning of the word. *First Marine Insurance Company v. Gibbs*, 173 F.3d 863 (10th Cir. Okla. 1999); *Mid-Continent Cas. Co. v. Peerless Boiler & Engineering Co.*, 398 P.2d 79 (Okla. 1965).

State Farm argues that the Oklahoma Supreme Court has unambiguously defined "household" to mean "those who dwell under the same roof and compose a family." *Henderson v. Eaves*, 516 P.2d 270, 274 (Okla. 1973). *See also*, *First Marine Insurance Company v. Gibbs*, *supra* at 3. It is undisputed that Delay and Wood lived separate and apart from Federico, living in completely different cities. Therefore, State Farm contends, under the Oklahoma Supreme Court's definition of household, Delay and Wood did not reside in the same household with Federico at the time of the incident, and, therefore, are not entitled to defense and indemnification under the Policy. The Court agrees.

Bemo argues that the term "household" is ambiguous and that the reasonable expectations doctrine operates to provide coverage to Delay and Wood. Oklahoma adopted the reasonable expectations doctrine in *Max True Plastering Co., v. U.S. Fidelity and Guar. Co.,* 912 P.2d 861 (Okla. 1996). Under the doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. *Max True Plastering Co.,* 912 P.2d at 865. In construing an ambiguity against the insurer and in favor of the insured, the objectively reasonable expectations of the insured should be considered. *Spears v. Shelter Mut. Ins. Co.,* 73 P.3d 865, 868 (Okla. 2003). In order for the reasonable expectations doctrine to apply, a court must first determine that certain policy language is

ambiguous as a matter of law. *Max True Plastering Co.,* 912 P.2d at 869. Insurance contracts are ambiguous *only* if they are susceptible to two different constructions. *Id.*

In support of his contention that the term "household" is ambiguous, Bemo cites to *Dalpaos-Lawrence v. Guide One American Insurance,* Civ-04-500-FHS (E.D. Okla. 2006). However, the Court finds *Dalpaos-Lawrence* inapposite to Bemo's position. In *Dalpaos-Lawrence*, this Court found the term "household" unambiguous:

> The Court finds no ambiguity with respect to [the] phrase [a resident of the same household]. From the standpoint of a "reasonably prudent lay person," *Spears*, 73 P.3d at 869, "*a resident of the same household*" ***must certainly include the requirement that one be living with and within the same physical space as another on a continuous basis.*** Beginning in February 2002, the living arrangement between Plaintiff and [her husband] did not meet this requirement. They had separated and were physically living apart with no intention of reconciling. Clearly, under a "plain, ordinary and popular sense," understanding of the phrase, Plaintiff and [her husband] were not residents of the same household at the time of Plaintiff's accident in November 2002.

*Id.* (emphasis added and internal citations omitted). Similar to the plaintiff and her husband in *Dalpaos-Lawrence*, Delay and Wood lived separate and apart from Frederico. As such, Delay, Wood, and Frederico do not meet the requirement that one be "living with and within the same physical space as another on a continuous basis" to be considered residents of the same household as articulated by *Dalpaos-Lawrence*. *Id.* This Court finds that the term "household" is not ambiguous as a matter of law. As the term "household" is not ambiguous, the reasonable expectations doctrine is not applicable in this case. Therefore, what Federico may have "reasonably expected" is not applicable.

Bemo further appears to argue that Federico maintained two households and that Delay and Wood primarily resided in one of them, thus rendering Delay and Wood insureds by definition. Bemo, however, offers no evidence to support this contention. While it is conceivable that a person could maintain two households as suggested in the authorities cited by

5

Bemo, the factors in the cited cases supporting dual households are not present in the instant matter.

In *Aetna Casualty and Surety Co. v. Means*, 382 F.2d 26 (10th Cir. 1967), the Tenth Circuit held that a married son who lived with his wife in an apartment separate and away from the son's father might have a second household as a member of his father's household and could be considered an insured by definition under his father's automobile insurance policy. In *Means*, there were evidentiary factors which supported the fact that the married son maintained two households, a household with his father and another independent household. Some of these factors included: the son's state identification card showed his address to be that of this father's house; military records showed that the son's permanent address was that of his father's house; the son kept clothes at this father's house; the father helped support his son; and the son was a minor. The court held it was a question of fact for a jury to decide whether the son was a resident of his father's household in addition to maintaining his own household. *Means*, 382 F.2d at 29.

Here, Bemo has offered no evidence similar to the evidence in *Means* supporting his contention that Federico maintained a second household in Muskogee with Delay and Wood. There is no evidence that Federico considered the Muskogee house to be her permanent residence. Further, there is no evidence that Federico contributed to the support of Delay and Wood or that Delay and Wood contributed to the support of Federico. There is no evidence that Federico kept clothes in the Muskogee house or maintained a room to live in at the Muskogee house. The Court finds that Bemo has not presented sufficient evidence to create a material question of fact as to whether Federico maintained a household at the Muskogee property. Accordingly, State Farm is entitled to summary judgment.

## CONCLUSION

After consideration of the briefs, and for the reasons detailed above, State Farm's Motion for Summary Judgment is **GRANTED**.

**ORDERED** this 2nd day of May, 2013.

*[signature]*
James H. Payne
United States District Judge
Eastern District of Oklahoma